UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-60 (CKK) |
| v. : | |
| : | |
| JESUS RIVERA, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S MOTION TO ADMIT INTO TRIAL THE ADOPTIVE STATEMENT OF DEFENDANT

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this motion to admit into evidence at the trial certain statements adopted by the defendant pursuant to Federal Rule of Evidence 801(d)(2)(B)

## INTRODUCTION

As the Defendant and his wife drove home on the day after the attack on the Capitol his wife broadcast their experience live over the internet. The Defendant participated in the broadcast by frequently commenting on, adding to, or modifying parts of her statement. However, when his wife described how fencing and other barriers erected on the Capitol grounds had been broken the defendant remained silent. In doing so, under the circumstances, the Defendant manifested an adoption or belief in the truth of this portion of his wife's statement. Accordingly, this portion of the statement is admissible against the Defendant as an adoptive admission pursuant to Federal Rules of Evidence 801(d)(2)(B).

## FACTUAL BACKGROUND

On January 6, 2021, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College for the 2020 U.S. Presidential Election, the Defendant, along with a large group of individuals, illegally entered

restricted areas of the Capitol grounds and then into the Capitol Building. The Defendant, accompanied by his wife, first entered onto restricted Capitol grounds by crossing Constitution Avenue at Second St and traveling southeasterly in the direction of the Peace Monument. Fencing and other barriers that had been placed around the Capitol Grounds to mark the restricted area had been knocked over.

The following day the Defendant and his wife drove back to their Florida home. As the Defendant drove, his wife, seated next to him, began to broadcast live over the internet and described to the audience the couple's experience on January 6, 2021. It is unknown how long the broadcast lasted. However, the first 10:46 minutes were recorded and has been recovered by the government.[1] When the broadcast begins the Defendant's wife tells the audience that she wants to tell her story. The Defendant immediately corrects her by saying "It's not your story". His wife then offers up "My point of view" and the Defendant again corrects her again by saying "Your encounter" and his wife responds by telling the audience that she is going to describe her "encounter." Next, as his wife settles in to describe events, she says she wants to share… but then struggles to find the right word. The Defendant then comments that she is going to describe what "we" saw.

As the broadcast continues the Defendant continues to participate by frequently interjecting comments, or phrasing to his wife's statements. Other examples include, but are not limited to, the Defendant describing individuals they met as "patriots", describing the "removal of trash cans" and the "threat of fines" as ways in which the city made it difficult, stating that he and his wife had "roughed it" and noting that a porta-potty "did not have a lock" on it. In short, the Defendant continually joined into his wife's statements about what they saw.

---

[1] This recording has been provided to the defendant in FBI 302 serial 77.

At the 7:30 minute point in the recording the Defendant's wife describes what they encountered as they came onto the Capitol grounds

> *"We went to the restroom, by the time we got done with that we realized, you know, there were barriers being broken at the Capitol. So what do we do? Oh you know, we came to get footage so let's go get footage. We walk to the Capitol, and we had to fight the crowd a little bit but at this time, by the time we get there, it was about a 10 minute walk from where we were, when we get there and all the barriers had been broken, the mesh fences, the metal barriers, everything. The police at this point had been pushed back just about as far as they could be pushed before people are at the doors."*

As his wife is describing the events above, the defendant remains silent. He does not correct, suggest different phraseology, interrupt, or object. His wife then moves on to describe other events to which the defendant adds further comments and suggestions.

## ARGUMENT

I. **The statements of his wife are adoptive statements of the Defendant and are admissible against him at trial**

The Defendant has been charged by information in this case with, among other counts, violating 18 U.S.C. § 1752(a)(1) and (a)(2), by knowingly entering or remaining on restricted grounds without lawful authority. The statute defines "restricted buildings or grounds" to include any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person a person being protected by the Secret Service is or will temporarily be visiting. 18 U.S.C. § 1752(c)(1)(B). The statute provides that a person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.

One way that the government intends to prove that the Defendant acted knowingly is by introducing into evidence at trial his wife's statement regarding the barriers, fences, and police as statements that have been adopted as true by the Defendant. Under Federal Rule of Evidence

3

801(d)(2)(B), a statement is not hearsay if it is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth. This exception is firmly rooted in American jurisprudence and no independent inquiry under the Confrontation Clause is required. *United States v. Beckham*, 296 U.S. App. D.C. 311, 968 F.2d 47, 51-52 (1992). Fed Rules Evid R 801(d)(2)(B). See also, *United States v. Safavian*, 435 F. Supp. 2d 36, 43-44 (D.D.C. 2006). In other words, the government intends to offer the recording of the Defendant's wife as evidence against him without calling the wife to testify.

When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such, that under the circumstances, the defendant would have been induced to respond, and whether there are sufficient foundational facts from which the fact finder could infer that the defendant heard, understood, and acquiesced in the statement. *United States v. Robinson*, 275 F.3d 371, 382-83 (4th Cr. 2001). A party may manifest adoption of a statement in any number of ways, including words, conduct, or silence. See *Marshall v. Young*, 833 F.2d 709, 716 n.3 (7th Cir. 1987). A statement need not be directed at the defendant for it to be admissible as the defendant's admission. *United States v. Watson*, 552 F. App'x 480, 486 (6th Cir. 2014). See, e.g., *United States v. Grunsfeld*, 558 F.2d 1231, 1237 (6th Cir. 1977) (defendant's silence when introduced to third party as his codefendant's "business partner" was an adoptive admission); *United States v. Hoosier,* 542 F.2d 687, 688 (6th Cir. 1976) (defendant's silence in face of girlfriend's statement to third party regarding "sacks of money" in their hotel room was an adoptive admission).

Through his silence as his wife described the fallen barriers the Defendant has adopted her statements as his own. It is clear the Defendant heard her statements because he was actively involved in her statement of events both before and after her description. Immediately prior his

4

wife described a porta-potty that was not fenced. The Defendant interjected that it also did not have a lock on it. When his wife moved on to describe other events the defendant continued to interject. This provides the foundation for a finding that the Defendant knew and heard his wife's description of regarding the barriers. He commented immediately before and soon thereafter, proving that he heard and understood her statement.

The circumstance of the broadcast provides a foundation for a finding that by remaining silent when her heard his wife's description of the fallen barriers the defendant acquiesced in the statement. As described above, throughout the broadcast the Defendant did not hesitate to offer corrections or other comments to his wife's. But when she described the fallen barriers, the Defendant remained silent. Given how he had interacted throughout the broadcast, it is reasonable to conclude that had the Defendant disagreed with the description of the barriers or the police or believed them to be untrue he would have interjected himself into the broadcast, offered a different description or objected.  By not doing so and remaining silent the Defendant manifested his adoption of the accuracy of his wife's description and adopted them as his own. The statements are therefore not hearsay and can be used against him as adoptive statements.

CONCLUSION

For these reasons, the United States requests that this court enter an order, as described above, allowing it to present the recorded statement of his wife at trial.

>Respectfully submitted,
>
>MATTHEW M. GRAVES
>Acting United States Attorney
>
>By:   /s/*Barry K. Disney*
>Barry K Disney
>KS Bar No. 13284
>Mona Lee M. Furst
>KS. Bar No. 13162
>Assistant United States Attorneys
>601 D. Street N.W.
>Washington, DC 20579
>Barry.Disney@usdoj.gov
>(202) 305-4367