UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>JESUS D. RIVERA,<br><br>    Defendant. | Criminal Action No. 21-060 (CKK) |

**MEMORANDUM OPINION & ORDER**
(June 17, 2022)

A two-day bench trial in this criminal matter concluded on June 15, 2022. The Government charged Defendant Jesus Rivera by Information with: (1) Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); (3) Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Am. Information, ECF No. 39. Before trial, the Government filed its [44] Motion in Limine, seeking to admit a statement by Defendant's wife as adoptive pursuant to Federal Rule of Evidence 801(d)(2)(B); and, on May 31, 2022, the Court entered an order holding the [44] Motion in abeyance, to be resolved at trial. The Court orally granted the [44] Motion in Limine, and this Memorandum Opinion & Order further explains the Court's reasoning.

On January 7, 2021, Defendant's wife began an "Instagram Live" video as she and Defendant drove home from Washington, DC to Pensacola, Florida. Gov.'s Ex. 403. The video was broadcast to her Instagram followers and any Instagram user who might have accessed her Instagram profile. *Id.* In it, Defendant's wife recounted her experience on the grounds of the United States Capitol. In particular, Defendant's wife stated

1

> We went to the restroom, by the time we got done with that we realized, you know, there were barriers being broken at the Capitol. So what do we do? Oh, you know, we came to get footage, so let's go get footage. We walk to the Capitol, and we had to fight the crowd a little bit but at this time, by the time we get there, it was about a ten minute walk from where we were. We get there and all the barriers had been broken: the mesh fences, the metal barriers, everything. Like, the police at this point had been pushed back just about as far as they could be pushed before people are at the doors.

*Id.* As the Court discusses further below, on its review, the Court counts no fewer than twelve instances over the course of the roughly ten minute video in which Defendant interrupted his wife to correct her statements. *See id.* Many of these corrections related to statements that might be viewed as inculpatory. *See id.* Accordingly, and after hearing further argument by the parties at trial, the Court concluded that the Government showed by a preponderance of the evidence that, per Fed. R. Evid. 801(d)(2)(B), Defendant "manifested that [he] adopted or believed [this statement] to be true," and granted the [44] Motion in Limine.

Although the Federal Rules of Evidence generally prohibit hearsay, Rule 801 has exempted statements by a party opponent from its definition of hearsay. Fed. R. Evid. 802(d)(2). Rule 802(d)(2) defines several categories of statements that may be imputed to the party opponent, including a statement that "the party . . . adopted or believed to be true." *Id.* This is an adoptive statement, also sometimes termed an adoptive admission. "[T]he exception for adoptive admissions . . . is firmly rooted in American jurisprudence" and in this Circuit. *United States v. Beckham*, 968 F.2d 47, 51 (D.C. Cir. 1992). To be an adoptive statement, the Defendant must "'have understood and unambiguously assented to [the other's] statement.'" *Id.* (quoting *Naples v. United States*, 344 F.2d 508, 512 (D.C. Cir. 1964)). This "understanding and assent may be established through conduct as well as words." *Id.*; *see also Landis v. Tailwind Sports Corp.*, 292 F. Supp. 3d 211, 221 (D.D.C. 2017) (mere possession of document insufficient). In *Beckham*, for example, an undercover police officer approached two individuals

who appeared to be conducting drug transactions. 968 F.2d at 49. "When [one of the individuals] told [the arresting officer] that he could get another rock of crack [cocaine] from [the defendant,] [the defendant] immediately got up from his chair, walked over to a stash of crack [cocaine] that was packaged for distribution, and began to open it. By that action, [the defendant] indicated his endorsement of [his associate's] statement." *Id.* at 52 (cleaned up).

In addition to overt action, silence can also manifest adoption depending on the circumstances. 6 Handbook of Fed. Evid. § 801:21 (9th ed. 2021) (collecting cases); *see also Naples v. United States*, 344 F.2d 508, 512 (D.C. Cir. 1964) *overruled on other grounds by Fuller v. United States*, 407 F.2d 1199 (D.C. Cir. 1967) (en banc). The Court's inquiry in this regard is objective and focused on the totality of the circumstances. *See Naples*, 344 F.2d at 512. The primary question "is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the [factfinder] could infer that the defendant heard, understood, and acquiesced in the statement." *United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006). As other jurisdictions have explained applying the law of this Circuit, a defendant's "failure to object or to deny a [person's] statements at the time they were made is especially probative of the defendant's acquiescence if they are made in the presence of a third party who was not an accomplice of a crime." *E.g.*, *Brown v. United States*, 464 A.2d 120, 124 (D.C. 1983).[1] As such, the more inculpatory the comment, the more likely silence adopts it. *See United States v. Giese*,

---

[1] *See also United States v. Grunsfeld*, 558 F.2d 1231, 1237 (6th Cir. 1977) (defendant's silence when introduced to third party as his codefendant's "business partner" was an adoptive admission); *United States v. Hoosier*, 542 F.2d 687, 688 (6th Cir. 1976) (defendant's silence in face of girlfriend's statement to third party regarding "sacks of money" in their hotel room was an adoptive admission).

597 F.2d 1170, 1195-96 (9th Cir. 1979) (whether statement is accusatory is probative of adoption by silence).

Here, the totality of the circumstances show that it is more likely than not that Defendant adopted his wife's statement regarding the broken barricades. Review of the entire video shows that Defendant was an active participant in his wife's conversation with her Instagram viewers. The Court counts no fewer than twelve instances in which Defendant interrupted to offer some factual correction or counsel his wife to omit certain factual details. Early in the video, for example, Defendant urged his wife to characterize her account as "her truth" or "her story," which could be understood as an effort to maintain some plausible deniability on his part. Defendant nevertheless continued to interrupt, insisting that she refer to surrounding insurrectionists as "patriots." Later, Defendant offers some inaudible suggestion that his wife omit a detail from her account, and his wife replies "I won't" and informs the audience "we're trying not to… we're trying to figure everything out." That Defendant interrupted so frequently, and regularly, throughout the Instagram Live suggests that he "heard, understood, and acquiesced" not just in the particular statement at issue, but in many of the statements that he did not interrupt.

The inculpatory nature of the comment at issue is also key to the Court's conclusion. Defendant is accused, among other things, of unlawfully and knowingly entering a restricted area. Barriers destroyed by an angry mob violently attempting to enter the United States Capitol would put Defendant on notice that his presence on grounds beyond the destroyed barriers would be unauthorized. Given Defendant's efforts to prevent his wife from making inculpatory comments, Defendant likely understood that his awareness of destroyed fencing would, in fact, be inculpatory. Yet Defendant did not correct his wife's statement. As such, the Court

4

concludes that, under the totality of the circumstances, Defendant manifested that he adopted or believed his wife's statement to be true.

Accordingly, it is hereby

**ORDERED**, that the Government's [44] Motion in Limine is **GRANTED**.

**SO ORDERED**.

Dated: June 17, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge