UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 1:21-CR-00060-CKK |
| | § | |
| JESUS D. RIVERA | § | |

**DEFENDANT'S SENTENCING MEMORANDUM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Defendant, through Counsel, and submits this memorandum for This Honorable Court's consideration during sentencing. It is the position of the Defense that the proper sentence for Mr. Rivera is probation.

**I.**

**FACTUAL BASIS OF THE OFFENSES**

The Presidential election of November, 2020, was one of the most-contentious elections in recent American history. The electorate was divided in a manner rarely seen in our lifetime, and a large number of voters who favored the re-election of President Donald Trump believed the outcome of the election was invalid and the product of fraudulent actions by many persons and officials. The President, himself, claimed the election had been stolen and called upon members of both houses of Congress to reject the results and oppose validation of the Electoral College results.

In advance of the date of the official validation of the election, President Trump announced that he would address concerned voters in a speech the morning of January 6, 2021. This event was attended by thousands of persons, most of whom agreed with the President's allegation that the election had been stolen by fraud and deceit by the other party.

Mr. Rivera, a cinematographer who operated a political blog and podcast, chose to attend the President's speech and traveled from his home in Pensacola, Florida, to Washington, DC. After attending the President's speech and hearing the rally cry to "stop the steal," Mr. Rivera left the event and walked back towards his lodging in the city.

Upon learning that a large group who had attended the President's speech had marched to the U.S. Capitol to protest the election, Mr. Rivera walked there, carrying with him a professional Sony video camera for the purpose of capturing the protests.

As was shown in the various videos and other camera footage at trial, Mr. Rivera arrived at the Capitol grounds well after a large crowd had gathered and he witnessed the goings-on.

Mr. Rivera was live-streaming what he saw and offered his own narration of events for his audience, a predominantly right-wing group who likely favored the protests.

Mr. Rivera described in his narration the protestors walking up the steps and climbing walls to get to the entrances of the building. He also saw protestors break windows and enter the Capitol, and he then followed them inside to continue videoing the event.

Mr. Rivera entered the Capitol through a window, stood in the entry way for a few minutes, then followed the crowd through some of the building, including the Crypt area. It was there that Mr. Rivera questioned a member of the Capitol Police Force why they were allowing the protest to go on inside the Capitol. These were the only words Mr. Rivera spoke to any person inside the Capitol building. He did not say or do anything to encourage or incite violence or destruction of property, and the only words he said inside or outside the building, aside from the comment to the police officer, were his narration for the video.

Mr. Rivera thereafter exited the building where he had entered, without personally causing any disturbance or damage to public property. He did not enter closed chambers or offices, and

did not take anything from the Capitol premises.

## II.

## ADDITIONAL PERSONAL INFORMATION

Mr. Rivera offers additional information that we believe relevant to assessing punishment in this case.

As briefly mentioned in the PSI, Mr. Rivera served just under ten years in the U.S. Marine Corps. Omitted from the PSI is a description of his combat service and injuries which led to his diagnosis with Post Traumatic Stress Disorder ("PTSD") and his eventual 90% disability rating from the Department of Veterans Affairs.

Mr. Rivera deployed with his unit to Iraq in 2004, served at Camp Blue Diamond in the Al Assad region of Iraq, and returned to the U.S. in March of 2005. During his time in Iraq, he sustained three closed-head injuries from rocket and mortar attacks and one when a vehicle he was riding in struck an Improvised Explosive Device ("IED"). He also had less-serious knee and back injuries, which, when combined with his Traumatic Brain Injuries ("TBI") resulted in his being evaluated as 90% disabled. The nature is his injuries are such that it is likely he will eventually be rated at a 100% disability level.

Also attached are letters from individuals who have known Mr. Rivera through their interaction in church, attesting to his good character.

The Defense suggests that, considering all facts of Mr. Rivera's actions in this case, his personal circumstances and his good character, a sentence to probation would suffice to punish him, in accordance with the factors enumerated in Title 18, U.S. Code, Section 3553(a).

## III.

## CONCLUSION

WHEREFORE, premises considered, The Defendant very respectfully requests that This Honorable Court sentence him to a term of probation.

>Very respectfully,
>
>*/S/ Guy L. Womack*
>Guy L. Womack
>Counsel for Defendant
>Texas Bar No. 00788928
>609 Heights Blvd.
>Houston, Texas   77007
>Tel:  (713) 224-8815
>Fax:  (713) 224-8812
>Guy.Womack@USA.net

## CERTIFICATE OF SERVICE

A copy of the foregoing was delivered via CM/ECF to the U. S. Attorney's Office by ecf. filing this 17th day of October, 2022.

>*/S/ Guy L. Womack*
>Guy L. Womack