UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>JESUS RIVERA,<br><br>    Defendant. | Criminal Action No. 21-60 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(December 22, 2022)

Pending before this Court is Defendant Jesus Rivera's [88] Motion for Stay of Sentence Pending Appeal ("Def.'s Mot."); the Government's [89] Opposition to Defendant's Motion ("Govt. Opp'n"); and Defendant's [90] Reply to the Government's Opposition ("Def.'s Reply"). Upon review of the pleadings, the relevant legal authorities, and the record as a whole, this Court **DENIES** Defendant Jesus River's Motion for Stay of Sentence.

**I. BACKGROUND**

At the conclusion of a two-day bench trial, Mr. Rivera was convicted by this Court of one count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); one count of Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Judgment, ECF No. 82; *see also* Findings of Fact and Conclusions of Law ("Findings of Fact"), ECF No. 62, which are incorporated by reference herein.

Mr. Rivera moves now for a stay of his sentence pending his appeal filed on November 15,

1

2022. The Government opposes Defendant's request for a stay, on grounds that Defendant "has not shown that his appeal 'raises a substantial question of law or fact likely to result in a reduced or probationary sentence[.]'" Govt. Opp'n, ECF No. 89, at 1. Defendant's Motion has been fully briefed and is ripe for resolution by this Court.[1]

## II. LEGAL STANDARD

"[A] person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" shall be "detained, unless [the Court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and further, that "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(A)&(B); *United States v. Zimny*, 857 F.3d 97, 100-101 (1st Cir. 2017) (discussing the likelihood prong). The United States District Court for the District of Columbia Circuit ("D.C. Circuit") has defined a "substantial question" as "a close question or one that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 555-56 (D.C. Cir. 1987) (internal quotation marks omitted).

## III. ANALYSIS

The Government asserts that Mr. Rivera has not raised "a substantial question of law or fact likely to result in" a reduced or probationary sentence. 18 U.S.C. § 3143(b)(1)(B). Govt.

---

[1] In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCrR 47(f).

Opp'n, ECF No. 89, at 4.[2]

      A. Defendant's Motion

In his Motion, Defendant indicates that he has "retained new counsel to pursue his appeal in the Court of Appeals," and the "appeal will likely encompass the length of the sentence as well as other issues in the case." Def.'s Mot., ECF No. 88, at 1. Defendant requests a stay of his incarceration pending appeal because he will likely "have completed his 8-month term of incarceration by the time his appeal is decided in the D.C. Circuit." *Id.* at 2. The "argument" underlying Defendant's request for a stay – in his Motion – is his allegation that his 8-month sentence is disproportionately long in light of the misdemeanor sentences received by defendants in other January 6 cases, particularly because Mr. Rivera has no prior criminal history. *See generally* Def.'s Mot., ECF No. 88, at 2-3.

With regard to Defendant's claim that his sentence is too long, the Court notes that Defendant received the statutory maximums of six months on Counts 3 and 4. *See* 40 U.S.C. § 5109(b) (establishing a six-month maximum for violations of Section 5104 (e)(2)(D) & (G)). In contrast, the eight month sentences imposed on Counts 1 and 2 are below the statutory maximum of no more than a year, *see* 18 U.S.C. § 1752(b)(2), and they are in the middle of the six to twelve month guideline provision set out by the Probation Office in its revised Presentence Report ("PSR"). *See* Revised PSR, ECF No. 74, at ¶ 84. The Government acknowledges that the Guidelines are advisory but asserts that they are the "product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." Govt. Opp'n, ECF No. 89, at 5 (quoting *Gall v. United States*, 552 U.S. 38, 46 (2007)); *see also*

---

[2] No one asserts that Defendant is a risk of flight or danger to the community, *see* Def.'s Reply, ECF No. 90, at 3, and in fact, the Court is permitting Mr. Rivera to self-surrender to the Bureau of Prisons by January 9, 2023.

*Rita v. United States*, 551 U.S. 338, 347 (2007) (a sentence within the advisory guideline range is entitled to a presumption of reasonableness).

Moreover, while Mr. Rivera alleges that his counsel believes that "the eight-month prison sentence in this case is the longest misdemeanor sentence among all Jan. 6 cases thus far (out of as many as 200 misdemeanor sentences)," Def.'s Mot., ECF No. 88, at 1, he does not "cite sentencing comparisons" nor does he "narrow it down to others charged with the same crimes as h[im] who also went to trial." Govt. Opp'n, ECF No. 89, at 5. This stands in contrast to the cases cited by the Government in its Sentencing Memorandum, which compared sentences received by defendants who had committed similar acts. *See* Govt. Sentencing Mem., ECF No. 69, at 22-25 (citing three cases, including two where shorter sentences were imposed and one where an eight month sentence was imposed). Mr. Rivera has the burden of showing that there is a substantial question of law or fact likely to result in a reduced sentence, *see, e.g., United States v. Zimny*, 857 F.3d 97, 100 (1st Cir. 2017), but in this case, in his Motion, he has not proffered anything to demonstrate that there is a substantial question.

The remainder of Defendant's Motion focuses on the hardship placed on Defendant's family if he is incarcerated pending his appeal. *Id.* at 3. The Government argues, and this Court agrees, that, in his Motion, "[Mr]. Rivera fails entirely to identify any question of law or fact that he intends to press on appeal, focusing instead of the length of his sentence and various aspects of his personal character" rather than on evidence admitted in error or any other reason his conviction should be set aside. Govt. Opp'n, ECF No. 89, at 4. However, the Court notes that Defendant's Reply does augment his Motion by explaining that, on appeal, Defendant will raise an ineffective assistance of counsel claim, and accordingly, the Court will address also that argument by Defendant.

B. Defendant's Reply

In his Reply, Mr. Rivera asserts, without any explanation or evidentiary support, that "[m]uch of the basis for Rivera's lengthy jail sentence was due to humorous posts and memes, which Rivera mostly did not write or create, posted on Facebook and/or other social media." Def.'s Reply, ECF No. 90, at 6. This unsupported allegation by Defendant is directly contradicted by this Court's analysis in its Findings of Fact, which focused on Defendant's *own* actions and words.

Additionally, Mr. Rivera makes an entirely unsupported claim that his "long jail sentence is in part a punishment for Rivera's decision to exercise a constitutional right [to go to trial]," as well as a claim that his "sentence is around four times longer that the Probation Office . . . expected." Def.'s Reply, ECF No. 90, at 6. While the Probation Office did initially calculate Defendant's total offense level as "6," *see* PSR, ECF No. 67, at 9, the Government objected to the application of Guideline 2B2.3, and the Probation Office was directed by this Court to respond to that objection. See October 20, 2022 Minute Order. The Probation Office revised its calculation, based on application of Guideline 2A2.4, with the result that Defendant's offense level was calculated as a "10," *see* Revised PSR, ECF No. 74, at 9, and the Probation Office's sentencing recommendation was adjusted upward. Therefore, the Court finds that Mr. Rivera's statement regarding the Probation Office's expectation is misleading, at best.

The Court turns next to Defendant's argument focusing on his allegation of ineffective assistance of counsel. Defendant contends that "the Government avoids [] mention[ing] the fact that the Defendant participated in the January 6th events as a type of reporter such as a journalist or blogger" and it is within his "First Amendment rights to provide an opposing view to public

events[.]" Def.'s Reply, ECF No. 90, at 3-4.  Defendant alleges his lawyer was ineffective because he did not "pursue any defense related to Rivera's journalism.  Def.'s Reply, ECF No. 90, at 5.  This Court notes that Defendant's proffered *defense* rests on a series of loosely related and generalized allegations: (1) that he is a "conservative news and entertainment journalist;" (2) that he has traveled to several Trump rallies; (3) that he was interviewed by WKRG News5 in Mobile and was "tentatively hired" and the program manager was "aware" that Defendant was going to Washington on January 6 and would be "shooting video" and "acting as a news correspondent;" and (4) that he had a "professional" camera.  Def.'s Reply, ECF No. 90, at 5.

The Court notes further that this issue of Defendant's status as a journalist was raised by defense counsel during the trial.  *See* Transcript of Bench Trial (June 14, 2022), ECF No. 64, at 178: 6-11 (where Defendant, through counsel, argued that he was voic[ing] [his] First Amendment disagreement with the government" and he was "not involved with any violence," but instead, '[h]e was filming it, and filming everything that happened[.]" )   This issue was addressed also in this Court's Findings of Fact, where this Court indicated that it "reviewed an interview Defendant gave after his arrest to a podcast called "New American" which was admitted into evidence as Government's Exhibit 335," ECF No. 62, at 9, and during that interview, Defendant indicated that he came to the District of Columbia to attend and record a rally.  *Id.*  Defendant explained further that:

> After leaving the rally to get lunch, Rivera states that he heard from others that there "was so much stuff going on" at the Capitol and resolved to make his way there in order to "document" footage that would help him "get his name out there."  He further states that he is, in no uncertain terms, "not a journalist," and did not go to the Capitol as such, through he might eventually in another career "want to be one."  Rather, he tells the interviewer that he is a "photographer,' a "cinematographer," and a "videographer" by trade.

*Id.* at 9-10.

Additionally, in its Findings of Fact, the Court summarized the testimony of the Government's witnesses regarding the security precautions taken before January 6, 2021, including the fact that "members of the media were permitted to enter the Capitol building only after they had been vetted by their company, vetted by the Capitol Police, and issued official badges by the Sergeants-at-Arms." Findings of Fact, ECF No. 62, at 4. In contrast, the evidence presented to this Court indicates that Defendant entered the Capitol in the following manner:

> Sometime after attending the rally, Defendant became determined to march to the Capitol itself. On his way, . . . [about] a block away from the Capitol grounds, he comments that he was "about to take [his] ass to the middle of the [United] State[s] Capitol[.]" . . . He also urged his followers watching his Facebook livestream to share his livestream with their friends and followers.
>
> As he penetrated the restricted area, he saw destroyed and torn fencing that he understood had been erected to keep members of the public off Capitol grounds. His livestream, . . ., also captured fencing that was still intact with "Area Closed" signs clearly visible. . . Defendant arrived near the foot of the northwestern stairway on the West Front leading from the Lower Terrace to the Upper Terrace at approximately 1:59 p.m. Once there, Rivera filmed the police line struggling to hold back a crush of rioters[.]

*Id.* at 7 (internal citations omitted).

While Defendant was filming, he was making gratuitous encouraging comments, including "Patriots are going crazy. Let's get out there," shouting instructions to rioters attempting to climb a wall about "an easier way up," and celebrating with a rioter near him, saying that the events felt like a "birthday" present. *Id.* at 8-9. Defendant "spent approximately twenty minutes roaming the halls of the Capitol, videoing, livestreaming, and taking selfies." *Id.* at 9. He "exited through the broken window opposite the one through which he entered." *Id.* After returning home, Mr. Rivera "proudly told his followers of his participation in the riot," explaining that he was happy to have "challenge[d] authority" after "push[ing] his way through riot police" and making his way to "the front lines." *Id.* at 9. Defendant chastised his Facebook followers who did not agree with his actions and concluded that he "[could] honestly say [he] had a great time." *Id.*

7

This Court finds that Defendant's allegations of ineffective assistance of counsel relating to his counsel's failure to pursue this "defense" that Defendant was acting as a journalist does not "raise a substantial question of law or fact likely to result in" a reduced or probationary sentence, first because this claim was raised by defense counsel, and second, because the record evidence in this case rebuts Defendant's allegations that he was acting in the capacity of a journalist when he entered the Capitol and livestreamed video to Facebook. Nor do any of the other claims raised by Defendant present a substantial question of law or fact which would support Defendant's request for a stay. Accordingly, it is this 22nd day of December 2022, hereby

ORDERED that Defendant's [88] Motion for Stay of Sentence Pending Appeal is DENIED.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE